Nott, Ch. J.,
delivered tbe opinion of tbe court: '
Tbe claimant prior to tbe civil war was proprietor of a stage line running from Newbern to Plymouth, in tbe State of North Carolina, and a mail contractor with tbe United States. After tbe outbreak of tbe war and tbe secession of tbe State, be continued to run bis stages and to carry tbe mail. It appears by vouchers from the rebel archive office that at one time be received $41 from the Confederate government for transporting three soldiers and at another time $269 for forage. It does not; appear that be was ever paid for transporting tbe mail.
Apart from these transactions, tbe evidence indicates that be never gave aid or comfort to tbe rebellion; and tbe question now presented is whether tbe act above stated constitutes aid and comfort in law. Tbe sale of tbe forage was probably involuntary, a military command taking what it needed and giving a voucher for it. That is to say, tbe court does not regard tbe decedent as having been a contractor, voluntarily selling and furnishing supplies, but as one yielding to tbe duress of superior force. Tbe transportation of tbe three soldiers may also be considered as an involuntary service; for a man running a public stage in North Carolina at that time certainly could not have excluded passengers because they were Confederate soldiers. The question, then, is whether a man voluntarily carrying the mails with or without compensation for tbe Confederate- States thereby gave aid, from a legal point of view, to tbe rebellion.
Pursuant to an act of tbe Confederate Congress May 9,1861, tbe postmaster-general on May 13, 1861, issued bis proclamation fixing tbe 1st day of June as tbe day for tbe commencement of tbe Confederate postal service. Tbe proclamation contained among others these provisions:
“Whereas by tbe provisions of an act approved March 15, 1861, and amended by the first section of an act approved May 9, 1861, tbe postmaster-general ‘is authorized, on and after a day to be named by him for that purpose, to take tbe entire charge and direction of tbe postal service in tbe Confederate States,’ and all conveyance of mails within their limits from and after such day except by authority of tbe postmaster-general is hereby prohibited: - *
“Now, therefore, I, John H. Reagan, postmaster-general of tbe Confederate States of America, do issue this my proclamation notifying all postmasters, contractors, and special and route agents in tbe service of tbe post-office department and *396 engaged in tbe transmission and delivery of the mails, or otherwise in any manner connected with the service within the limits of the Confederate States of America, that on and after the first day of June next I shall assume the entire control and direction of the postal service therein.
“All contractors, mail messengers, and special contractors for' conveying the mails within the Confederate States, under existing contracts with the Government of the United States, are hereby authorized to continue to perform such service under my direction from and after the day last above named, subject to such modifications and changes as may be found necessary, under the powers vested in the postmaster-gen eral by the terms of said contracts and the provisions of the second section of an act approved May 9,1861, conformable thereto. And the said contractors, special contractors, and mail messengers are required to forward without delay the number of their íoute or routes, the nature of the service thereon, the schedule of arrivals and departures, the names of the offices supplied, and the amount of annual compensation for present service, together with their address, directed to the ‘ chief of the contract bureau, post-office department, Montgomery, Alabama.”’
It therefore appears that the decedent was duly notified that if he continued to carry the mails after the 1st of June, 18 ¡1, he would do so as a contractor with an agent of the Confederate States.
It does not now appear that the decedent was paid for such services, but that does not help the case. Carrying the mails was a public service; the aid given was in rendering that service. For the contractor to decline to receive pay would not injure the Confederate government or neutralize the aid which he had given. Moreover, in this case there can be no presumption that the contractor would have gone on rendering service as a favor to the public and refraining from the acceptance of compensation for it as allegiance to the United States. In less than a year from the time when he became a Confederate-mail contractor Newbern was captured (March 14, 1862) and his mail route passed iuto the custody and under the control of the United States. In the unorganized or- newly organized condition of the Confederate government it is not astonishing that a mail contractor’s accounts were not adjusted and paid during the first nine months of the Confederate mail service.
Accordingly, it must be held that the claimant’s decedent rendered aid and comfort to the rebellion within the intent *397 and meaning of the Bowman Áct; and the case must be dismissed for want of jurisdiction.
The order of the court is that it be so reported to Congress.